**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ANDREW SCHLAF and | ) | |
| WENDY SCHLAF, | ) | |
| on behalf of plaintiffs and a class, | ) | |
| | ) | Case No.: 3:15-cv-50113 |
| Plaintiffs, | ) | |
| | ) | Honorable Frederick J. Kapala |
| vs. | ) | Magistrate Judge Iain D. Johnston |
| | ) | |
| SAFEGUARD PROPERTIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**AMENDED COMPLAINT – CLASS ACTION**

**INTRODUCTION**

1.      Plaintiffs bring this action to secure redress against improper debt collection activities.  Plaintiffs allege violation of the Fair Debt Collection Practices Act, 15 U.S.C. 1692 et seq. ("FDCPA").

**JURISDICTION AND VENUE**

2.      This court has federal question jurisdiction under 15 U.S.C. §1692k(d), and 28 U.S.C. §§1331 and 1337.

3.      Venue and personal jurisdiction in this District is proper because the events at issue occurred here.

**PARTIES**

4.      Plaintiffs Andrew and Wendy Schlaf are residents of Ogle County, where they own and reside in a home which is the collateral for the mortgage loan described herein.

5.      Defendant Safeguard Properties, LLC ("Safeguard") is a limited liability company chartered under Delaware law with its principal place of business located at 7887 Safeguard

1

Circle, Valley View, OH 44125.  It does business in Illinois.  Its registered agent and office is Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL  62703.

6.     Safeguard markets its debt collection services to mortgage companies with delinquent and defaulted borrowers.

7.     Safeguard has described its business as: "Safeguard Properties is the largest privately held mortgage field services company in the U.S.  Founded in 1990 and based in Valley View, Ohio, the company inspects and maintains *defaulted and foreclosed* properties for mortgage service companies, lenders, investors and other financial institutions.  Safeguard employs nearly 850 people, in addition to a network of thousands of contractors nationally. "(http://safeguardproperties.com/News_and_Events/Safeguard_In_the_News/2011/03/Safeguard _Properties_Announces_Four_Executive_and_Management_Appointments.aspx) (emphasis added)

8.     The same website also states: "Safeguard leads the industry in delivering a full spectrum of inspection, maintenance, preservation, property registration, repairs and rehab services on vacant, defaulted and foreclosed properties. "(http://www.safeguardproperties.com/Services.aspx )

9.     Among the services performed by defendant are:

a.  Exterior inspections.  "Inspectors visit defaulted properties to verify the occupancy status, determine the exterior condition of the property and inform the servicer of any adverse conditions.  Most importantly, inspectors verify and report on whether the property appears to be occupied or vacant." (http://www.safeguardproperties.com/Services/Property_Inspections/Exterior_Inspections.aspx)

b.      Communicating with delinquent borrowers on behalf of mortgage companies. "Through contact inspections, inspectors will make up to three attempts on behalf of mortgage servicers and lenders to provide contact information to delinquent borrowers…Attempts to contact the mortgagor are made during a visual exterior inspection for occupancy status per investor/insurer guidelines and/or client instruction….The inspector will leave a door hanger that contains the client's contact information, in an effort to have the mortgagor contact the client." (http://www.safeguardproperties.com/Services/Property_Inspections/Contact_Attempt_Inspectio n.aspx) (Accessed 9/8/2015)  Defendant's website previously stated: "Contact attempt inspections are a servicer's best option for contacting borrowers who are unable to be reached. Through this inspection, the inspector attempts to reach the borrower up to three times to give them information for the servicer or lender.  Multiple attempts are generally made 24 hours apart, in an effort to make contact with the occupant at different times of the day. . . ."

c.      Safeguard's web site further states that inspectors "are trained to not discuss anything with the mortgagor except that they are there to confirm occupancy and request that the mortgagor contact the mortgage company."  (http://www.safeguardproperties.com/Services/ Property_Inspections/FAQs.aspx)

10.     Safeguard promptly reports back to the mortgage company whether it has been able to contact the consumer and regarding the condition of the property:

Q: As a client, how will I know if an inspection is completed?

A: Most inspection results are automatically uploaded to the client system if the original order came from a downloaded file.  All results are displayed on our Web site once they have been through our internal QC process.  Results can then be printed or forwarded to a third party if needed.  Various reports are available on the website that will display properties that are vacant, have damage, a new condition is reported on the property, and so on.  Many clients use these reports to view their vacant results daily.   (http://www.safeguardproperties.com/Services /Property_Inspections/FAQs.aspx)

11.     Safeguard uses the mails and telephone system in the course of its business.

12.     Safeguard is a debt collector as defined in the FDCPA.

## FACTS

13.     Plaintiffs have a residential mortgage loan on their home serviced by Green Tree Mortgage Servicing ("Green Tree").

14.     In a March 2015 foreclosure filing, Green Tree claimed that the loan was in default since October of 2014.

15.     Defendant performs debt collection services for a number of mortgage companies, including Green Tree.

16.     All of the communications described below were engaged in by Safeguard as debt collection for Green Tree.

17.     Green Tree hired defendant to perform debt collection services on its behalf.

18.     Specifically, Safeguard was to determine the physical status of the collateral of the defaulted debt, including whether it was abandoned.  This information is particularly important to a creditor when the debt is in default.

19.     Safeguard was also to perform a contact inspection service, whereby Safeguard left a note upon the debtor's doorknob which asked the recipient to call Green Tree with their account number ready.

20.     Green Tree's purchase of defendant's contact inspection service indicates that Green Tree was having problems with the debtor and used Safeguard as part of its debt collection strategy.

4

21.     On or about February 2015, the note attached as <u>Exhibit A</u> was taped to plaintiffs' door by a representative of defendant.

22.     Plaintiffs were intimidated, annoyed and aggravated at the visits to their home by Safeguard representatives.

23.     Safeguard has not at any time furnished plaintiffs with any of the disclosures required by 15 U.S.C. §1692g or §1692e(11).

24.     Safeguard's representatives did not identify themselves as representatives of Safeguard. Plaintiffs only learned of Safeguard when they complained about its activities to Green Tree and a Green Tree representative identified Safeguard as the company that had been visiting them.

25.     It is the standard policy and practice of Safeguard to (a) not furnish consumers with the disclosures required by 15 U.S.C. §1692g or §1692e(11) and (b) not have their representatives identify themselves as representatives of Safeguard.

## COUNT I – FDCPA

26.     Plaintiff incorporates paragraphs 1-25.

27.     Defendant violated 15 U.S.C. §1692g, by failing to provide required notices within five days of the initial communication with plaintiff, or at any other time.

28.     Section 1692g provides:

**§ 1692g.  Validation of debts**

**(a) Notice of debt; contents.  Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--**

**(1) the amount of the debt;**

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts. If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(c) Admission of liability. The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

(d) Legal pleadings. A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

6

**(e) Notice provisions.  The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by the Internal Revenue Code of 1986 [*26 USCS §§ 1* et seq.], title V of Gramm-Leach-Bliley Act [*15 USCS §§ 6801* et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.**

29.    In addition, defendant violated 15 U.S.C. §1692e(11) which provides:

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(11) The failure to disclose in the initial written communication  with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action. . . .**

30.    Defendant violated also 15 U.S.C. 1692e(14), which defines as a deceptive collection practice "The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."  Defendant violated this provision by leaving notes with the telephone number of Green Tree and sometimes requesting contact with "your mortgage servicer," without providing defendant's identity.

## CLASS ALLEGATIONS

31.    Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), plaintiff brings this action on behalf of a class.

32.    The class consists of (a) all natural persons with Illinois addresses (b) that defendant contacted with a written request for information or communications (c) on or after a

7

date one year prior to the filing of this action, and (d) on or before a date 20 days after the filing of this action (e) to whom defendant did not provide its identification and the disclosures described in 15 U.S.C. §1692e(11) and 1692g.

33.    The class members are so numerous that joinder is impracticable.

34.    On information and belief, there are more than 40 natural persons in the class.

35.    There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members.  The predominant common questions are:

(1)    Whether defendant was required to comply with the FDCPA;

(2)    Whether defendant's method of doing business violates the FDCPA.

36.    Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

37.    Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

38.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.   Many debtors may not realize that their rights are violated.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class members and against defendant for:

(a)    Statutory damages;

(b)    Attorney's fees, litigation expenses and costs of suit;

(c)    Such other or further relief as the Court deems proper.

8

s/ Daniel A. Edelman<br>
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Emiliya Gumin Farbstein
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on September 29, 2015, I caused to be filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following counsel of record:

Panos T. Topalis
docket@triblet.com

Shomshon Moskowitz
smoskowitz@tribler.com

s/ Daniel A. Edelman<br>
Daniel A. Edelman

9

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


<u>s/ Daniel A. Edelman</u>
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## <u>DOCUMENT PRESERVATION DEMAND</u>

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

s/ Daniel A. Edelman
Daniel A. Edelman

11