# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| Andrew Schlaf, et al., | ) | |
|---|---|---|
| *Plaintiffs*, | ) | |
| v. | ) | Case No: 15 C 50113 |
| Safeguard Properties, LLC, | ) | |
| *Defendant*. | ) | Judge Frederick J. Kapala |

## ORDER

Defendant's motion to dismiss [34] is denied.

## STATEMENT

Plaintiffs, Andrew and Wendy Schlaf, have sued defendant, Safeguard Properties, LLC, for alleged violations of the Fair Debt Collection Practices Act ("FDCPA") in both their individual capacity and as representatives of a putative class. Safeguard has moved to dismiss, arguing that, as alleged, it does not meet the definition of "debt collector" in the FDCPA, and even if it did, it is protected by a specific enumerated exception to the FDCPA's provisions. For the reasons which follow, the motion to dismiss is denied.

## I. BACKGROUND

The following facts are drawn from the amended complaint, which this court presumes is true for the purposes of the instant motion. Plaintiffs own and reside in a home which is the collateral for a mortgage. The loan secured by that mortgage is serviced by Green Tree Mortgage Servicing. According to the amended complaint, Safeguard's website claims that it "inspects and maintains defaulted and foreclosed properties for mortgage service companies, lenders, investors and other financial institutions." (Am. Compl. 2 (emphasis omitted).) The same website states that Safeguard "leads the industry in delivering a full spectrum of inspection, maintenance, preservation, property registration, repairs and rehab services on vacant, defaulted and foreclosed properties." (Id.) Safeguard offers the following specific services, again according to their website:

    a. Exterior inspections. "Inspectors visit defaulted properties to verify the occupancy status, determine the exterior condition of the property and inform the servicer of any adverse conditions. Most importantly, inspectors verify and report on whether the property appears to be occupied or vacant."

    b. Communicating with delinquent borrowers on behalf of mortgage companies. "Through contact inspections, inspectors will make up to three attempts on behalf of mortgage servicers and lenders to provide contact information to delinquent

> borrowers. . . . Attempts to contact the mortgagor are made during a visual exterior inspection for occupancy status per investor/insurer guidelines and/or client instruction. . . . The inspector will leave a door hanger that contains the client's contact information, in an effort to have the mortgagor contact the client." Defendant's website previously stated: "Contact attempt inspections are a servicer's best option for contacting borrowers who are unable to be reached. Through this inspection, the inspector attempts to reach the borrower up to three times to give them information for the servicer or lender. Multiple attempts are generally made 24 hours apart, in an effort to make contact with the occupant at different times of the day. . . ."
>
> c. Safeguard's web site further states that inspectors "are trained to not discuss anything with the mortgagor except that they are there to confirm occupancy and request that the mortgagor contact the mortgage company."

(Id. at 2-3 (citations omitted).)

Green Tree, who was apparently having problems with the plaintiffs, hired Safeguard to determine the physical status of plaintiffs' home, including whether it was abandoned, and to conduct a contact inspection. In February 2015, Safeguard performed the inspection of plaintiffs' residence and left a door hanger on plaintiffs' door which asked the recipient to contact Green Tree with their account number ready. On the outside, the door hanger said in English and Spanish: "IMPORTANT INFORMATION ENCLOSED." Inside the door hanger was a slip of paper, again in English and Spanish, which stated, in relevant part:

IMPORTANT

PLEASE CALL

GREEN TREE

[Phone Number]

PLEASE BE READY TO GIVE YOUR ACCOUNT NUMBER.

WE ARE EXPECTING YOUR CALL TODAY.

The first two lines are substantially larger than the remainder, and "Green Tree" plus the phone number are on a stuck-on label, suggesting that the door hanger is a product offered to all of Safeguard's clients and only the name and phone number are changed depending on which client Safeguard is servicing. Also, as mentioned below, the same door hanger has been filed in another case against Safeguard with a different client's contact information, reinforcing that conclusion.

According to the amended complaint, Safeguard does not provide the disclosures required by 15 U.S.C. § 1692g, which plaintiffs allege violates the FDCPA. Plaintiffs also allege that the door hanger is a false or misleading representation because it fails to disclose that the communication is a debt collector seeking to collect a debt in violation of the FDCPA at § 1692e. Plaintiffs also seek to bring the same claims as representatives of a class in Illinois. Safeguard has moved to dismiss, arguing that the above allegations do not plausibly suggest it meets the FDCPA's definition of a debt collector and that, even if it does, it is explicitly exempted from the FDCPA's provisions

by the fiduciary exemption, 15 U.S.C. § 1692a(6)(F)(i).

## II. DISCUSSION

When deciding a defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all of the well-pleaded allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Killingsworth v. HSBC Bank Nev., N.A., 507 F.3d 614, 618 (7th Cir. 2007). To state a claim under the Federal Rules, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." Id. at 679.

Safeguard's first argument turns on the FDCPA's definition of a "debt collector," which is found at 15 U.S.C. § 1692a(6), and states that a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." The allegations of the complaint do not plausibly claim or suggest that the principal purpose of Safeguard's business is the collection of debts, therefore the parties argue concerning whether the allegations are sufficient to show that Safeguard "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 1692a(6). Safeguard argues that its alleged actions of inspecting plaintiffs' premises, attempting a personal communication, and leaving a door hanger with a note to contact the loan holder does not meet that definition.

Courts, including some in this district, that have addressed the question of whether Safeguard's actions meet the definition of "debt collector" have split on the issue. Safeguard relies on what it describes as the bulk of cases, but those uniformly arise in the context of Safeguard inspecting or entering a home to winterize it without communication with the debtors. See, e.g., Alqaq v. CitiMortgage, Inc., No. 13 C 5130, 2014 WL 1689685, at *3 (N.D. Ill. Apr. 29, 2014) (collecting cases); Deegan v. Safeguard Properties, Inc., No. 13 C 4840, Tr. at 3, 5-8 (N.D. Ill. Sept. 13, 2013) (Dkt. 19-20); Platek v. Safeguard Properties, Inc., No. 12-1607, 2014 WL 2808908, at *1 (W.D. Pa. June 19, 2014) (adopting Alqaq's reasoning in its entirety). Since none of them involve attempts at in-person communication with debtors or communication to a debtor through the leaving of a door hanger or other note, none of them informs this court's analysis. Indeed, the best support for Safeguard's argument comes from a more recent case which the parties did not cite, Amelina v. Mfrs. & Traders Trust Co., No. 14cv1906 WQH (NLS), 2015 WL 7272224, at *9 (S.D. Cal. Nov. 17, 2015), wherein a district judge determined that a complaint failed to state a claim against Safeguard as a debt collector where defendant was hired to inspect a property and, in the process, sent a postcard to plaintiff. However, that postcard merely asked the individual living at the property to confirm their residence and informed the debtor that they had a right to a face-to-face meeting with the bank. Id. at *2-3, 9. Unlike the door hanger in this case, the postcard did not request the resident to contact the bank or state that contact was expected and no attempts at personal contact were made.

3

These cases stand in contrast to Simpson v. Safeguard Properties, L.L.C., wherein a judge in this district determined that allegations materially identical to those in this case stated a claim against Safeguard and concluded that those allegations were sufficient to plausibly suggest that Safeguard is a debt collector for the purposes of the FDCPA. No. 13 C 2453, 2013 WL 2642143, at *2 (N.D. Ill. June 12, 2013). The Court based its conclusion on the following language:

> Although Simpson does not allege that Safeguard collects or attempts to collect debts on behalf of mortgage companies, entities that contact consumers attempting to facilitate communication with creditors have been found to be "debt collectors." Safeguard argues that the facts in Simpson's complaint demonstrate that Safeguard is merely a messenger. However, the allegation that Safeguard markets its services to mortgage companies makes it reasonable to infer that Safeguard attempts to regularly facilitate the collection of debts, which the court finds qualifies under § 1692a(6) as "regular[ ] ... attempts to collect, ... indirectly, debts ... asserted to be owed or due another."

Id. (citations omitted). The Third Circuit, albeit in an unpublished case, came to a similar result in Siwulec v. J.M. Adjustment Servs., L.L.C., 465 F. App'x 200 (3d Cir. 2012) (unpublished). In that case, a credit counseling company claimed, similar to Safeguard in this case, to be functioning as mere messengers for the real debt collector. In rejecting that argument, the Third Circuit held that:

> Given the facts as alleged, JMAS is no mere messenger service for debt collectors. In addition to delivering letters, JMAS representatives are instructed to urge alleged debtors, in person, to call the creditor . . . . They were to gather contact information from the debtors directly, to speak with their neighbors, and to conduct a visual assessment of their properties. These activities bring JMAS out of any messenger exception and into the coverage of the FDCPA, which was certainly intended to regulate in-person debt collection visits.

Id. at 204.

This court finds Siwulec and, even more so, Simpson persuasive. As mentioned earlier, the cases that found in favor of Safeguard do not have a similar attempt at in-person communication or a written communication urging debtors to contact the mortgage servicer immediately. Moreover, the court notes that the allegations in this case include that Safeguard has put on its own website that it offers to provide in-person and written communications to a debtor "on behalf of" the mortgage servicers, suggesting that Safeguard is exercising discretion in its activities and is not simply offering to carry a note from the mortgage servicer to the debtor like a messenger service. Furthermore, the door hanger itself appears to be drafted by Safeguard, rather than the mortgage servicer, based both on the hanger itself and the fact that an identical hanger appeared in Simpson involving Safeguard's services to another client. Messenger services typically do not draft the correspondence they carry to recipients. Instead, Safeguard sold a service to make three attempts at a face-to-face encounter with a debtor, and to leave a written message, all with the alleged intent that the debtor should

4

contact the mortgage servicer to assist in that servicer's collection efforts.[1]  As with Simpson, those allegations are sufficient to plausibly suggest that Safeguard "attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

Safeguard's second argument is that it meets an exception to the general definition of debt collector.  Specifically, the FDCPA excludes from that definition, among other things not relevant to this suit, "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement . . . ." § 1692a(6)(F).  Some courts have found that agencies hired to do a great number of things for its employer, like a management company of rental housing, can fit within the fiduciary exception.  See, e.g., Welnowska v. Westward Mgmt., Inc., No. 13 C 06244, 2014 WL 3726089, at *3 (N.D. Ill. July 24, 2014) (collecting cases).  Here, however, the allegations of the amended complaint state that Safeguard was only hired to do two related things: engage in a visual inspection of the property and to attempt contact and make collection efforts.  Moreover, "[n]umerous courts have held that the 'incidental to' requirement means that the collection activity must not be central to the fiduciary relationship."  Id. at *4 (alteration and quotation marks omitted).  There is nothing in the allegations of the amended complaint which would lead to the conclusion that Safeguard's advertised contact inspections services were merely incidental to its other services, rather than a regular part of its business model.  Since this court must take all reasonable inferences in favor of plaintiff at the Rule 12 stage, see Twombly, 550 U.S. at 555, this argument is not persuasive either.  Safeguard is, of course, welcome to raise this issue at summary judgment if the evidence in the case reveals something different from the allegations.

### III. CONCLUSION

Safeguard's motion to dismiss is denied.

Date: 2/16/2016                                             ENTER:

                                                            _____

                                                            FREDERICK J. KAPALA

                                                            District Judge

---

[1] Safeguard is free to argue at summary judgment that this allegation is incorrect, should the evidence during discovery show otherwise.