```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          WESTERN DIVISION

 3   ANDREW SCHLAF, on behalf    )   Docket No. 15 C 50113
     of plaintiffs and a class, )
 4   and  WENDY SCHLAF, on       )
     behalf of plaintiffs and a  )
 5   class,                      )
                                 )
 6              Plaintiffs,      )   Rockford, Illinois
                                 )   Tuesday, June 28, 2016
 7         v.                    )   1:30 o'clock p.m.
                                 )
 8   SAFEGUARD PROPERTIES, LLC,  )
                                 )
 9              Defendant,       )
                                 )
10         v.                    )
                                 )
11   DITECH FINANCIAL LLC,       )
                                 )
12              Respondent.      )

13
                      TRANSCRIPT OF PROCEEDINGS
14              BEFORE THE HONORABLE IAIN D. JOHNSTON

15   APPEARANCES:

16   For the Plaintiffs:        EDELMAN, COMBS, LATTURNER &
                                GOODWIN LLC
17                              (20 S. Clark Street,
                                 Suite 1500,
18                               Chicago, IL  60603) by
                                MS. CATHLEEN M. COMBS
19                              MS. EMILIYA G. FARBSTEIN

20   For the Defendant:         TRIBLER ORPETT & MEYER, P.C.
                                (225 W. Washington Street,
21                               Suite 1300,
                                 Chicago, IL  60606) by
22                              MR. PANOS T. TOPALIS

23   For the Respondent:        PILGRIM CHRISTAKIS LLP
                                (321 N. Clark Street,
24                               26th Floor,
                                 Chicago, IL  60654) by
25                              MS. DINA M. MASIELLO
```

```
 1     Court Reporter:          Mary T. Lindbloom
                                327 S. Church Street
 2                              Rockford, Illinois  61101
                                (779) 772-8309
 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    (The following is from a tape-recording of proceedings:)
2         THE CLERK:  Calling 15 CV 50113, Schlaf, et al. v.
3    Safeguard Properties, LLC.
4         THE COURT:  Good afternoon, counsel.  Could I get
5    appearances for the record, starting with the plaintiff, please?
6         MS. FARBSTEIN:  Good morning, your Honor.  We have
7    Emiliya Farbstein and Cathleen Combs here for plaintiff.
8         THE COURT:  Good afternoon.
9         MS. MASIELLO:  Good morning, your Honor.  This is -- or
10   good afternoon.  This is Dina Masiello on behalf of Ditech from
11   Pilgrim Christakis.
12        MR. TOPALIS:  Good afternoon, your Honor.  Panos
13   Topalis on behalf of Safeguard Properties.
14        THE COURT:  Good afternoon.
15        All right.  I've received the parties' submissions.
16   I've been through them.  Hold on one second here.  So, subject
17   matters 1, 3, 5, and 6 are agreed to, right?  The answer to that
18   is yes.
19        MS. FARBSTEIN:  Yes.
20        THE COURT:  Okay.  Let's talk about some of the other
21   ones.  Let me just start with a general proposition.  Look.  The
22   subject matters need to be narrow and tight.  Otherwise, the
23   witness' answers are going to be vague and goofy.  So, you get
24   what you ask for.  I'm not saying that the descriptions are so
25   vague that they are impossible to respond to, but the broader

```
 1    the descriptions, the looser the descriptions, the less likely
 2    someone's going to be able to give the deposing party a tight,
 3    concise answer.  I think we all know that.  So, that's the
 4    general proposition.
 5              Let's look at number two.  Ditech's concern is that
 6    visual inspections, in quotations, is an undefined term, but
 7    visual inspections is contained in the master property service
 8    agreement.  So, if it's a term in Ditech's own document, why is
 9    that a concern?
10              MS. MASIELLO:  Your Honor, this is Dina Masiello on
11    behalf of Ditech.  That is a term that is contained in the
12    document.  However, it's not the name of the inspection that it
13    relates to.  It's a description.  So, the clarification was
14    whether or not the -- which inspection plaintiffs are referring
15    to.  The visual inspection is a description that is contained.
16    So, that's where, you know, the clarification was sought to make
17    sure that the parties were referring to the same type of service
18    that is offered by Safeguard.
19              THE COURT:  All right.  Lynyrd Skynyrd counseled us to
20    be simple kind of men, and I assume that applies to women.
21    Visual inspections.  I would suspect that that term would mean
22    to use your eyes and use your vision and look at an object or
23    entity or thing and inspect it.  And I assume when Ditech wrote
24    the phrase visual inspections, it kind of knew what it meant.
25              So, can we just go with what that term generally means
```

1    in the ordinary understanding of English and as used in Ditech's
2    own document?
3            MS. MASIELLO:  Your Honor, this is Dina Masiello from
4    Ditech.  Just for clarification, it is a phrase that's used by
5    Safeguard in the documents that it provided to Ditech, and the
6    phrase visual inspection is used in multiple instances within
7    the agreement.  It is --
8            THE COURT:  Does it mean different things in different
9    locations in the same document?  Because that would be odd.
10           MS. MASIELLO:  It doesn't, your Honor.  It's just a
11   matter of which inspection.  There are certain types of
12   inspections that Safeguard will perform for Ditech.  Those each
13   have specific names, and within the names of those are
14   descriptions of the inspection.  So, it's just a matter of
15   clarifying which inspection it is that plaintiffs are referring
16   to.
17           THE COURT:  Okay.  So, plaintiff, which one do you
18   want?  Which visual inspection?  What kind of visual inspection
19   do you want?
20           MS. COMBS:  Your Honor, we're taking a deposition.
21           THE COURT:  I understand that.
22           MS. COMBS:  We're entitled to ask them to explain what
23   services they provide, and then we'll tell them which of the
24   ones are important.  I mean, you're asking us to guess what they
25   do without taking the dep.  It seems to me that if it's a phrase

1   that they use in their documents, then we'll in the course of
2   the deposition ask them to explain it and then tell them what we
3   want.
4           THE COURT:  Well, then they're not going to be able
5   to -- then you're in the middle of a deposition, and they don't
6   know which witness to produce or how to prepare that witness.
7           So, I'm asking you.  What you're asking for is a
8   witness who could testify about visual inspections.  Ditech's
9   coming back and saying there are multiple different types of
10  visual inspections.  Which visual inspections do you want?
11          MS. COMBS:  We want all of them.
12          THE COURT:  Okay.
13          MS. COMBS:  And why not?  Because in fact --
14          THE COURT:  Counsel.  Counsel.  First of all, watch
15  your tone.  Secondly, don't interrupt me.  Let me go back to
16  Ditech.
17          Can you produce a witness who can talk about all of
18  them?
19          MS. MASIELLO:  Yes, Judge.  We can produce a witness
20  who can discuss the inspections that Safeguard provides.
21          THE COURT:  Okay.  So, that takes care of that aspect
22  of this objection.
23          Let me ask the plaintiff.  How are these -- how would
24  that be relevant to a claim or defense?
25          MS. FARBSTEIN:  The defense, the broadest version of

1    Safeguard's defense, is that they're not a debt collector, and
2    one of the things they point to is that the contact attempt
3    inspections are merely a throw-on that they sometimes offer with
4    regards to visual inspections, which they say are not debt
5    collection.  So, we want to know why is Ditech ordering this,
6    what are they getting.
7             THE COURT:  All right.  Help me tie that up to whether
8    or not they're a debt collector.  I mean, if they're going out
9    there looking at properties, how is that relating to debt
10   collection?  I know there's this affirmative defense that's
11   raised, but tighten it up for me.  I'm a little lost.
12            MS. FARBSTEIN:  Your Honor, the contact attempt
13   inspection actually involves communicating with the debtor,
14   whereas just a plain visual exterior inspection would not
15   involve communicating with the debtor, and one of our possible
16   positions is that the communication is what constitutes the debt
17   collection.
18            THE COURT:  Okay.  All right.  So, okay.  I'm following
19   on more closely then.  If it's a visual inspection and there's
20   nothing communicated, how would a visual inspection be an
21   attempt to collect a debt?
22            MS. FARBSTEIN:  I think that that's our point is that
23   just a visual inspection isn't.
24            THE COURT:  Okay.
25            MS. FARBSTEIN:  But when it's got the contact added to

 1     it, then it becomes an attempt to collect a debt.
 2              THE COURT:  Or it may become.
 3              MS. FARBSTEIN:  That's correct.  That will be the legal
 4     question we'll be discussing at length.
 5              THE COURT:  Okay.  Number four.  The extent to which
 6     Ditech uses Safeguard services to meet HUD requirements.  The
 7     concern is the HUD requirements aren't identified.  I think
 8     they're looking at for whatever HUD requirements were mentioned
 9     when counsel was in court and said that's what they did.  So,
10     can we identify -- specify which HUD requirements are
11     applicable?  That seems relatively straightforward, right?
12              MS. MASIELLO:  Yeah, I think plaintiff should be able
13     to do that.
14              THE COURT:  Okay.  Can plaintiff do that?
15              MS. COMBS:  I think defendants should be able to do
16     that.
17              MS. FARBSTEIN:  Since they're the ones who brought it
18     up.
19              THE COURT:  All right, defendant.  Which HUD
20     requirements are applicable?
21              MS. MASIELLO:  Judge, there are a series of HUD
22     requirements that come into play when dealing with an FHA loan,
23     which is the loan in this situation.  If that is what they're
24     looking for, that's fine.  I'm not sure how it's up to defendant
25     to identify documents or standards that plaintiffs want to

```
 1   question our witness on.
 2           THE COURT:  Their point is that Ditech's response was
 3   we'd do this because of HUD requirements, and they want to know
 4   which HUD requirements.  If you could just give them a range
 5   from whatever CFR to whatever CFR, that would be specific
 6   enough.
 7           I will tell you this is a seven-hour dep.  If
 8   plaintiffs' counsel wants to spend a lot of hours on each one of
 9   those regulations, you got seven hours.  Be careful how you use
10   your time.
11           All right.  So, identify the range of the federal
12   regulations that are at play, and that will take care of that
13   one.
14           Eight and nine, they're basically the same.  The extent
15   to which Safeguard manages money or property for Ditech.  That's
16   way too broad.  Nine.  The extent to which Safeguard managed
17   money or property for Ditech in relation to plaintiffs' account.
18   What's the problem with that one?
19           MS. MASIELLO:  Judge, we don't have any idea what
20   they're talking about managed money or property.  Safeguard is a
21   preservation company.  We provided them with the agreement
22   between the two parties which spells out in detail the services
23   that Safeguard provides for Ditech.
24           THE COURT:  Okay.
25           MS. MASIELLO:  So, managing money and property, what
```

```
 1   does that mean?  And they're assuming -- that's a very vague
 2   assumption.
 3           THE COURT:  Okay.  So, then you couldn't produce a
 4   witness who would testify to that, right?
 5           MS. MASIELLO:  Correct.  We've already agreed with
 6   counsel that we would produce a witness who could testify
 7   regarding the services that Safeguard provides to Ditech.
 8           MS. FARBSTEIN:  Your Honor, if Ditech is willing to
 9   provide somebody who can testify to the services that Safeguard
10   provides and if none of those services are managing money or
11   property, that will resolve the issue.
12           THE COURT:  Okay.  That seems like something that could
13   have been done without me intervening, but okay.  So, that will
14   answer that one.
15           Number ten.  The concern is the word interpretation; is
16   that right?
17           MS. MASIELLO:  Yes, your Honor.  And specifically
18   looking at plaintiffs' counsel's submission to you last week,
19   again there's still some confusion.  On the one hand, they point
20   out they want somebody to -- they're seeking to understand the
21   meaning of the various codes and numbers contained in this
22   document, and on the other hand, they say that -- it looks like
23   they want somebody to provide information as to the payment
24   status of plaintiffs' account at the time that the inspection
25   was ordered, which, again, I'm not sure what they're looking for
```

1    here.  Those are two very different things.

2            THE COURT:  And those are two very different things.
3    So, do you want somebody to tell you what the payment codes mean
4    or the other issue?

5            MS. FARBSTEIN:  Well, both.  And our understanding when
6    Ditech produced this document, it indicated that the documents
7    were produced in response to requests asking for the status of
8    plaintiffs' account.  Therefore, we'd like -- this seems like
9    the documents that give that answer, and we'd like to understand
10   what, in fact, it gives.

11           MS. MASIELLO:  Judge, I would just like to interject
12   there and say that Ditech objected to a request for documents
13   regarding the, quote, status and payment histories, and through
14   multiple conversations with plaintiffs' counsel, we were able to
15   identify that plaintiffs' counsel wanted the customer account
16   activity statements, which is essentially a billing statement.

17           THE COURT:  Okay.

18           MS. MASIELLO:  So, there is a big difference there.

19           THE COURT:  Right.  So, the billing statement has these
20   codes, right?

21           MS. FARBSTEIN:  Correct.

22           THE COURT:  Okay.  Plaintiff wants to know what the
23   codes are, right?

24           MS. FARBSTEIN:  Correct.

25           THE COURT:  And what they mean and how it relates to

1   the billing statement that's at issue in the property in this
2   case, right?
3            MS. FARBSTEIN:  Correct.
4            THE COURT:  All right.  Ditech will produce somebody to
5   do that for that document, those billing codes relating to this
6   case, and that will be the ruling.
7            Anything else to talk about this afternoon?
8            MS. FARBSTEIN:  I think seven was -- did we discuss
9   seven?
10           THE COURT:  Hold on one second.  We did not.
11           All right.  Plaintiff, tell me what you're trying to
12  get at there.
13           MS. FARBSTEIN:  As I mentioned a number of times, one
14  of Safeguard's defenses is that they were a -- they had a bona
15  fide fiduciary obligation to Ditech, and part of the process of
16  proving a bona fide fiduciary obligation relates to the
17  oversight and control by the principal of the agent.  So, that's
18  what we're trying to get at.
19           THE COURT:  How so?  Where is that concept of oversight
20  and control coming in?  Is that statutory?  Is it regulatory?
21  Is it in the agreement?  Where are we getting that?
22           MS. FARBSTEIN:  It's case law, your Honor.
23           THE COURT:  Okay.  All right.  So, what's the response
24  to that?  If the case law says control and oversight is an
25  element, are you just saying it's too broad, or what are you

1    getting at?

2         MS. MASIELLO: Judge, we're saying, first of all, this

3    is Safeguard's affirmative defense. This is not -- Ditech is

4    not a party to this case. Ditech is a third-party that has not

5    raised any affirmative defenses.

6         THE COURT: Sure.

7         MS. MASIELLO: So, I assume that any questions that

8    plaintiffs' attorney has regarding an affirmative defense raised

9    by Safeguard would have been addressed in the deposition of the

10   Safeguard representative.

11        Number two, we had discussed with plaintiff that we

12   were narrowing this deposition to three topics, and through

13   multiple objections and discussions, we narrowed those topics,

14   and at no point was it ever raised that plaintiffs wanted to

15   depose somebody regarding oversight and control by Ditech. So,

16   that's where our objection comes in.

17        THE COURT: Okay. So, Ditech's grumbling because

18   you're dropping on this late, and it should have been raised

19   earlier. When was it raised?

20        MS. MASIELLO: We agreed to these three topics on

21   May 25th, your Honor.

22        THE COURT: Okay.

23        MS. FARBSTEIN: Your Honor, these three so-called

24   topics were Ditech's provided understanding of what plaintiff

25   had requested, which took them about a month and a half to

1  provide, by the way, despite multiple conversations in the
2  meantime and multiple requests from plaintiffs for updates as to
3  the deposition.  And in my view types of services encompassed
4  the relationship between Ditech and the control and oversight by
5  Ditech of Safeguard.
6         Luckily, you asked us to be more specific here, and so
7  we were able to be more specific and thus learned that Ditech
8  had not envisioned that as part of the agreed-upon description
9  of the topic.  But at no time did plaintiffs agree to narrow the
10 topics.  It was a clarification, not a narrowing by any means.
11        THE COURT:  Okay.  Look.  No one cited me the case law.
12 I don't have it in front of me.  I don't have time to pull it
13 up.  You know, fiduciary does go to control and direction.
14        I'll go back to my initial response or my initial big
15 point is if the categories are broad, the answers will be broad.
16 I'm not saying Ditech -- and Ditech shouldn't produce a
17 know-nothing witness, but that's a pretty broad category.  And
18 so, if you start drilling down and the witness three levels deep
19 starts saying I don't know, it's going to be tough for me to
20 hold that witness' feet to the fire.  So, Ditech produce
21 somebody as best you can to answer that.  Okay?
22        MS. MASIELLO:  Okay, your Honor.
23        THE COURT:  All right.  Anything else to talk about?
24        MS. FARBSTEIN:  I don't believe so, your Honor.
25        THE COURT:  Okay.  Deposition's limited to seven hours.

1   Use it wisely.
2           MS. FARBSTEIN:  Thank you, your Honor.
3           THE COURT:  Thanks.
4           MR. TOPALIS:  Okay.  Thank you.
5           MS. MASIELLO:  Thank you.
6       (Which were all the proceedings had in the above-entitled
7       cause on the day and date aforesaid.)
8       I certify that the foregoing was transcribed from digital
9   recording to the best of my ability.
10
11  /s/ Mary T. Lindbloom
12  Official Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25