# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Andrew Schlaf, et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No: 15 C 50113 |
| | ) | |
| Safeguard Properties, LLC, | ) | |
| | ) | |
| *Defendant*. | ) | Judge Frederick J. Kapala |

## ORDER

Defendant's motion for summary judgment [77] is granted and plaintiffs' motion for summary
judgment [82] is denied.  The case is closed.

## STATEMENT

Plaintiffs, Andrew and Wendy Schlaf, filed an amended complaint against defendant,
Safeguard Properties, LLC ("Safeguard"), alleging that defendant violated various provisions of the
Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), specifically §§ 1692g,
1692e(11), and 1692e(14), and seeking class certification.[1]  Before the court are cross motions for
summary judgment.  For the reasons which follow, plaintiffs' motion is denied and defendant's
motion is granted.

## I. BACKGROUND

The relevant facts for purposes of the pending motions are undisputed unless noted in this
order.  The court previously issued an order which included an extensive recitation of the facts and,
therefore, only offers a brief recitation of the relevant facts and new evidence.  At all times relevant,
plaintiffs had an original mortgage on their property which had been obtained by Green Tree
Servicing, LLC ("Green Tree").[2]  Plaintiffs subsequently defaulted on their mortgage loan, and
Green Tree sent several notifications to plaintiffs regarding missed payments and late fees.

Safeguard is a mortgage field servicing company that provides various services for its clients
throughout the United States including property preservation and protection as well as occupancy
inspections.  Green Tree entered into a contract with Safeguard to conduct a variety of services on

---

[1]Plaintiffs moved for extension of time to brief their class certification claim.  This court dismissed plaintiffs'
motion without prejudice to refile at a later time.  At the time of this order, plaintiffs have not moved to certify the class.

[2]Ditech Financial LLC ("Ditech"), is the successor corporation to Green Tree.  Since the specific
communication between plaintiff and defendant that is the subject matter of this case refers to the lender as "Green Tree,"
the court will also refer to it as Green Tree, regardless of whether it was Ditech or Green Tree at the time.

its behalf, including occupancy inspections and property preservation. Some of the services Safeguard offers are in accordance with guidelines promulgated by the United States Department of Housing and Urban Development ("HUD") in order to establish occupancy once a property has been in default for 45 days.[3]

This suit arises from an incident that occurred on February 15, 2015. While plaintiffs' loan was still in default, defendant's representative[4] placed a door hanger on the outside doorknob of plaintiffs' property. In English and Spanish, the door hanger read: "**IMPORTANT INFORMATION ENCLOSED**." Inside the door hanger was a slip of paper, again in English and Spanish, which read, in relevant part:

**IMPORTANT**

*PLEASE CALL*

GREEN TREE

800-666-1143


*PLEASE BE READY TO GIVE YOUR ACCOUNT NUMBER.*

*WE ARE EXPECTING YOUR CALL TODAY.*

Green Tree's name and phone number appeared on a label affixed to the door hanger. Plaintiffs did not see who placed the door hanger. Upon arriving at home, Andrew Schlaf removed the door hanger and contacted Green Tree. To plaintiffs' knowledge, no further contact attempts have been made. Defendant previously filed a motion to dismiss for failure to state a claim, which was denied on February 6, 2016. Currently before the court are the parties' cross motions for summary judgment.

---

[3]The parties dispute whether the specific method of inspection conducted on plaintiffs' property was strictly required in order to establish occupancy pursuant to HUD guidelines. The relevant language of the HUD guidelines states:

> When a mortgage is in default because a payment was not received within 45 days of the due date of the missed payment, and efforts to reach the mortgagor by telephone or correspondence have proven unsuccessful, the mortgagee must make an inspection to determine if the property is vacant or abandoned.

Mortgagee Letter 2010-18, U.S. Dep't of Hous. and Urban Dev. (May 13, 2010). Defendant asserts that contact attempt inspections involving a door hanger left on the property containing a phone number for the borrower to contact Green Tree were made "pursuant to" or "per" the above HUD guidelines, but does not go so far as to say this specific method was strictly required by the guidelines. Plaintiffs assert that the specific method of leaving door hangers is not strictly necessary to fulfill HUD guidelines requirements because defendant's representatives have other ways in which they can determine occupancy such as looking through windows to see if there is furniture and people in the house, whether there are cars in the driveway, or whether the lawn has been mowed. This is not a genuine dispute; it is wholly possible that defendant's specific conduct, while not strictly required by the guidelines, was still one of the ways it could discharge its duty to "make an inspection to determine if the property is vacant or abandoned."

[4]The parties dispute whether the door hanger was placed by an employee or independent contractor hired by defendant. For purposes of this order, this fact is immaterial to the analysis and the individual placing the door hanger will be referred to as a representative.

## II. ANALYSIS

### A. Summary Judgment Standard

A court may only grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Burton v. Bd. of Regents, 851 F.3d 690, 694 (7th Cir. 2017). A genuine issue exists when, after viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, "a reasonable jury could return a verdict for the nonmoving party." Zaya v. Sood, 836 F.3d 800, 804 (7th Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The moving party initially bears the burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Spierer v. Rossman, 798 F.3d 502, 508 (7th Cir. 2015) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." Catrett, 477 U.S. at 322. Put another way, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. To avoid summary judgment, the opposing party then must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

Plaintiffs contend that defendant is a debt collector within the meaning of the FDCPA and violated the Act by failing to provide the required notices and its own identity in conjunction with the door hanger. Defendant argues that it is outside the statutory definition of "debt collector" and its activities do not violate the statute. Whether a defendant is a "debt collector" as defined by the FDCPA is a question of law appropriate for resolution on summary judgment. See, e.g., Bailey v. Sec. Nat'l Servicing Corp., 154 F.3d 384, 387-88 (7th Cir. 1998) (deciding defendants were not debt collectors for purposes of motion for summary judgment). Defendant also asserts that if this court finds that defendant is a debt collector under the FDCPA, then its activities fall under the fiduciary obligation exemption of § 1692a(6)(F)(i).

### B. "Debt Collector" under the FDCPA

The FDCPA is designed to deter wayward debt collection practices, see Henson v. Santander Consumer USA, Inc., 137 S. Ct. 1718, 1720 (2017), and prevents debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e; Heintz v. Jenkins, 514 U.S. 291, 292 (1995). The FDCPA applies only to entities which are "debt collectors" and only in relation to those activities which pertain to the collection of debt. See Neff v. Capital Acquisitions & Mgmt. Co., 352 F.3d 1118, 1121 (7th Cir. 2003). A "debt collector" is defined by the FDCPA as one of two alternatives: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" (the "principle purpose" definition), or (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (the "regularly collects" definition). 15 U.S.C. § 1692a(6); see also McCready v. eBay, Inc., 453 F.3d 882, 888-89 (7th Cir. 2006); Davidson v. Capital One Bank (USA), N.A.,

797 F.3d 1309, 1317 (11th Cir. 2015); Barbato v. Greystone Alliance, LLC, No. 13-CV-2748, 2017 WL 1193731, at *14 (M.D. Pa. Mar. 30, 2017). "To be a 'debt collector' under the FDCPA entails engaging in some affirmative conduct with regard to collecting a debt, as evidenced by the statute's use of active verbs." McCready, 453 F.3d at 889.

A party will not be considered a debt collector under the principle purpose definition if collection of debts is merely some of that party's business. See Davidson, 797 F.3d at 1317 (affirming dismissal of plaintiff's claim against bank, finding first definition did not sustain plaintiff's action when court could only plausibly infer that some part of defendant's business was debt collection). In Barbato, the entity that had carried out the alleged debt collection activities, Turning Point, had entered into a "Service Agreement" with a third party stating that the third party was seeking to "procure certain collection services from" Turning Point, and that Turning Point would undertake collection on each account placed by the third party. 2017 WL 1193731, at *3, 16. In a letter issued to the plaintiff that addressed numerous issues regarding plaintiff's debt, Turning Point identified itself as a "National Debt Collection Agency" and "debt collector." Id. at *5. Subsequently, two voicemails were left urging plaintiff to return the call. Id. at *5-6. Ultimately, however, the terms of the Service Agreement, self-identification, and other conduct towards plaintiff were insufficient at the summary judgment stage to show that the "principal purpose" of Turning Point's business was debt collection because the plaintiff had not established the role of debt collection in Turning Point's business as a whole. Id. at *17. While the Court in Barbato noted that the plaintiff may have had access to evidence sufficient to make such a showing, it made clear that, based on the record evidence, plaintiff's showing was insufficient. Id. at *18.

The same underlying principle played a key role in Siwulec v. J.M. Adjustment Services, LLC, a decision plaintiff relies on and appends in full to its response to defendant's motion for summary judgment. 465 F. App'x 200 (3d Cir. 2012). In reversing the dismissal of the Siwulec plaintiff's claim, the Third Circuit pointed out that the district court had focused on the actions taken towards plaintiff in that specific case, which was out of line with the "principal purpose" statutory language. Id. at 203. It held that courts should instead look at the defendant's business as a whole in determining whether its principal purpose is debt collection. The plaintiff in Siwulec had made allegations regarding the defendant's website, advertisements of FDCPA compliance, and contract terms relating to collection of debtors' information. Id. at 204. These allegations, if assumed to be true, and combined with the defendant's representatives' instructions "to urge alleged debtors, in person, to call the creditor while they watched," were sufficient to overcome a motion to dismiss for failure to state a claim. Id.

The record evidence here does not support a finding that the principal purpose of defendant's business is debt collection. Plaintiff has set forth evidence that defendant markets its services to mortgage companies, and points to defendant's website, which states that defendant "inspects and maintains defaulted and foreclosed properties for mortgage service companies, lenders, investors, and other financial institutions," and that "Safeguard is a turnkey resource for all aspects of default property management." Significantly absent from the record is language from the website advertising direct or indirect debt collection services. Defendant also specifies that it does not market its services solely to mortgage companies, and there is no evidence to the contrary. Testimony of Daniel Van Keuren, Green Tree's Director of Default, indicated that Green Tree only ordered a contact attempt inspection when a mortgage was in default. However, according to

testimony from Jennifer Jozity, Assistant Vice President of Inspections at Safeguard at the time of the events in question, Safeguard would never receive any explanation from a client, such as Green Tree, why a particular inspection was being done. Though it may have been the case that Green Tree only ordered contact attempt inspections when a mortgage was in default, this information was not communicated to Safeguard, meaning there is no evidence to support plaintiffs' contention that Safeguard must have known as much. Evidence showing that Safeguard knew its contact attempt inspections were only targeted at mortgages in default, though perhaps not sufficient on its own, would have tended to suggest that a principal purpose of Safeguard's business is debt collection. Such evidence is absent here. Indeed, the evidence shows that Safeguard also provides numerous other services to Green Tree such as grass cutting, winterizing pipes and utilities, and providing security and a lock box. Paraphrasing the court in Barbato, viewing the summary judgment record as a whole, plaintiff has not established, as a matter of law, that the "principal purpose" of Safeguard's business is the collection of debt, and thus has not established that Safeguard is a "debt collector" under the "principle purpose" definition of the FDCPA. Barbato, 2017 WL 1193731, at *18.

While a party may fall short of satisfying the "principle purpose" definition under the FDCPA, in Oppong v. First Union Mortgage Corp., the Third Circuit recognized that such a party could still be considered a debt collector under the second definition. 215 F. App'x 114, 118-19 (3d Cir. 2007) (noting that an entity was correctly not considered a debt collector under the "principal purpose" definition, but was still a debt collector under the "regularly collects" definition); see also Garrett v. Derbes, 110 F.3d 317, 318 (5th Cir. 1997) ("[I]f the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of his total business activity; the person still renders them 'regularly.'"). "Congress intended the 'principal purpose' prong to differ from the 'regularly' prong of its definition of debt collector." James v. Wadas, 724 F.3d 1312, 1317 (10th Cir. 2013). This court agrees that the language of the statute is sufficiently clear in its provision of two alternate definitions of "debt collector." 15 U.S.C. § 1692a(6).

As noted, this second definition requires a showing that the defendant "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Though the "FDCPA does not define the term 'regularly' or offer factors to consider in determining whether a defendant's debt collection practices fall within its provisions, a considerable amount of law has developed that addresses the proper interpretation of 'regularly' under the FDCPA." Silva v. Mid Atlantic Mgmt. Corp., 277 F. Supp. 2d 460, 464 (E.D. Pa. 2003) (collecting cases).

If Safeguard is to be considered a "debt collector," it would be under this second prong of the definition. The parties agree that Safeguard is a mortgage field servicing company that provides services for clients throughout the United States, and that one of these services is known as a "contact attempt inspection," which involves leaving a door hanger, described above, in an effort to establish a line of communication between the client and the mortgagor. Safeguard does not dispute that this is a regular practice, and plaintiff has not set forth evidence to show that any other Safeguard practice could be considered debt collection. Therefore, the question at issue is whether this practice satisfies the statutory definition of directly or indirectly collecting or attempting to collect a debt. "[I]f a purpose of an activity taken in relation to a debt is to 'obtain payment' of the

debt, the activity is properly considered debt collection." Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 461 (6th Cir. 2013). At the same time, however, "other courts interpreting this provision have concluded that there must be some limitation on what constitutes an 'indirect' attempt to collect a debt. "'[C]ollecting debts must mean something more than any role, no matter how tangential, in the collection process'; to find otherwise would lead to absurd results." Fielding v. FCC Fin., LLC, No. 12-CV-00194, 2015 WL 12532741, at *4 (M.D. Tenn. Jan. 22, 2015) (quoting Vincent v. The Money Store, 736 F.3d 88, 100-01 (2d Cir. 2013)). While it seems clear that leaving a door hanger containing no information regarding the mortgagor's debt or defendant's identity or contact information cannot be direct debt collection, the question of whether it is, or is an attempt at, indirect debt collection merits further analysis. The Ninth Circuit provided a possible example of indirect debt collection in Romine v. Diversified Collection Services, Inc., where the defendant, Western Union, had advertised a "talking telegram" as a "revolutionary new collections service" that was "specially developed for the credit and collections industry" and would "stimulate recoveries dramatically." 155 F.3d 1142, 1143 (9th Cr. 1998). Western Union obtained the names and addresses of debtors from DCS, a co-defendant, and sent the debtors a telegram, bearing the Western Union name, instructing debtors to call Western Union and enter their own phone numbers. Western Union would then provide these phone numbers to DCS so that DCS could call the debtor to pursue the collection of the debt. Id. at 1143-44. Ultimately, the court held that this practice went beyond mere information gathering or message delivery, and could be considered indirect debt collection.

Courts citing Romine have found other practices sufficiently similar to be considered indirect debt collection. See, e.g., Siwulec, 465 F. App'x at 204 (finding that advertising targeted at debt collectors, attempts to collect information directly from debtors and via neighbors, and urging debtors in person to call creditor was sufficient to overcome Rule 12(b)(6) motion); Fielding, 2015 WL 12532741, at *4-5 (finding sufficient evidence to create a genuine dispute of material fact as to whether defendant engaged in "indirect" debt collection where defendant advertised its services as a debt collection tool, gathered contact information for creditors, and urged debtors in person to call the creditor); Udis v. Universal Comms. Co., 56 P.3d 1177, 1179 (Colo. Ct. App. 2002) (finding Romine persuasive on interpretation of Colorado's analogous FDCPA and holding that a company that markets its services gathering debtor contact information for debt collectors is covered by the Act); see also Matmanivong v. Nat'l Creditors Connection, Inc., 79 F. Supp. 3d 864, 874-75 (N.D. Ill. 2015) (denying defendant's motion for summary judgment where defendant had interviewed borrowers about payment status, provided information to creditors, and promoted loan modification). In all of these cases the practices in question, though not reaching the level of "direct" debt collection, were still sufficiently related to debt collection to be included within the meaning of the FDCPA as "indirect" debt collection.

In contrast to those "indirect" debt collection practices, numerous other courts have found that alleged debt collectors' services more resembled those of a mere messenger service, and that such practices were too far removed from debt collection to bring defendants within the FDCPA definition of "debt collector." See, e.g., White v. Goodman, 200 F.3d 1016, 1019 (7th Cir. 2000) (finding FDCPA claim against company that performed ministerial duties for debt collectors, such as stuffing and printing letters, frivolous); Randle v. GC Servs., L.P., 48 F. Supp. 2d 835, 840-41 (N.D. Ill. 1999) (finding defendant's involvement resembled that of a mailing service when it sent dunning letters to debtors, even though its name and address appeared in the letters, because it did

not collect debts from debtors or direct them to contact defendant, did not provide follow up collection services, and charged creditor a flat fee); Aquino v. Credit Control Servs., 4 F. Supp. 2d 927, 929 (N.D. Cal. 1998) (finding that based on record evidence, Western Union's conduct was not regular "indirect debt collection" when it delivered debt notices to debtors in "Western Union yellow envelopes[s] emblazoned with the black-lettered Western Union imprimatur," but never requested debtors pay money to or contact it); Laubach v. Arrow Serv. Bureau, Inc., 987 F. Supp. 625, 631-32 (N.D. Ill. 1997) (holding that defendant was not debt collector within meaning of FDCPA when it did not collect money from or provide its own contact information to debtors, did not provide follow up collection services, and was paid same fee from creditors regardless of how much creditors collected); Trull v. Lason, 982 F. Supp 600, 607-08 (N.D. Ill. 1997) (finding evidence that defendant advertised itself to collection agencies, was involved in the creation of collection letters, and had its name appear on collection letters was not sufficient to overcome a motion for summary judgment). These cases make clear that not every level of involvement in the collection process can be called an attempt at debt collection, direct or indirect. See Vincent, 736 F.3d at 100-01. If parties are merely facilitating communication in the same way as someone delivering a message, for example by delivering a telegram or letter, or hanging a phone number on a doorknob with instructions to call, those practices cannot be reasonably construed as "attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Here, plaintiffs have not presented sufficient evidence to show that the practice in question rises to the level of indirect debt collection. Pursuant to the contract agreement, Green Tree selects the services that defendant performs on its behalf. Those services range from contact attempts to winterizing properties, changing locks, or mowing lawns. In a contact attempt, defendant's representative will either hand a door hanger to the debtor and instruct them to call the number on the door hanger or leave a door hanger at the property. No other contact or communication is made and plaintiffs have not provided any evidence to the contrary. Unlike Romine, the contact attempt inspections are not advertised as a collection service, the door hangers bear Green Tree's (not Safeguard's) name, and debtors are instructed to call a phone number that would put them in direct contact with Green Tree. Safeguard representatives were given no information regarding the borrowers' debt, and took no part in the actual debt collection process.

The Fielding Court held that there was a genuine dispute of material fact concerning the designation of its defendant as a debt collector. Although the facts of Fielding are somewhat similar to the facts of the instant case, the holding in Fielding is not controlling. This is so because contrary to Fielding's defendant, Safeguard has not advertised the contact attempt inspection as a debt collection tool, gathered contact information for creditors, or urged debtors in person to call the creditor. Further, this court is not persuaded by Fielding's appeal to the "broad and remedial purpose of the FDCPA." 2015 WL 12532741, at *5. Indeed, in this Circuit, "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." Shlahtichman v. 1-800 Contacts, Inc., 615 F.3d 794, 798 (7th Cir. 2010) (quoting Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004)). Even when considering the "expansive wording of the statutory definition of 'debt collector,'" Fielding, 2015 WL 12532741, at *5, plaintiff has not set forth sufficient evidence to show that Safeguard's practice of leaving door hangers with Green Tree's contact information and an advisement to

"PLEASE CALL" is an "attempt[] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

The case before this court is more like those of <u>Randle</u> and <u>Laubach</u>. There is no evidence that Safeguard's representatives collect money from debtors. Indeed, Safeguard is never informed of the rationale for the contact attempt inspection. Further, it does not engage in discussion with debtors beyond telling them to contact Green Tree. Like a messenger, Safeguard adds no content to the communication being delivered, but in essence merely points the debtor toward Green Tree for further information.[5] Safeguard's name and contact information are not contained in the door hanger message, further removing it from any act of "debt collection." Finally, there is no evidence that Safeguard's compensation is contingent on (a) whether or not the debt is ultimately paid, or (b) how much, if any, of the debt is paid, removing it further still from the debt collection process taking place between Green Tree and plaintiffs. Considering all the factors separating Safeguard from, or connecting it to, debt collection, there is not sufficient evidence to create a genuine dispute of material fact as to Safeguard's "debt collector" status; the practices illustrated by the facts before the court cannot be characterized as either direct or indirect "debt collection."

Plaintiffs correctly point out that this court has previously ruled in this case that their amended complaint made a plausible allegation that Safeguard is a debt collector sufficient to overcome Safeguard's motion to dismiss for failure to state a claim. <u>See</u> <u>Schlaf v. Safeguard Properties, LLC</u>, 15 C 50113, 2016 WL 612866 (N.D. Ill. Feb. 16, 2016). This court recognizes that it is not the only court to have done so on materially identical facts. <u>See</u> <u>Simpson v. Safeguard Properties, L.L.C.</u>, No. 13 C 2453, 2013 WL 2642143, at *4 (N.D. Ill. Jun. 12, 2013) (holding that allegations were sufficient to plausibly suggest that Safeguard is a debt collector); <u>Cohen v. Ditech Fin. LLC</u>, No. 15-cv-7124, 2017 WL 894429, at *3, 4 (S.D.N.Y. Mar. 3, 2017) (relying on <u>Simpson</u> and this court's earlier ruling in <u>Schlaf</u> to come to same conclusion). However, in <u>Schlaf</u>, this court also recognized that in response to the allegations of the amended complaint, "Safeguard [was] free to argue at summary judgment that this allegation is incorrect, should the evidence during discovery show otherwise." <u>Schlaf</u>, 2016 WL 612866, at *3 n.1. Safeguard has successfully done so. In this

_____

[5]Plaintiffs argue that defendant designed the door hanger, and that this is evidence that defendant is a debt collector. <u>See</u> <u>Randle</u> 48 F. Supp. 2d at 840 ("One factor that suggests that an entity is a debt collector under the FDCPA is whether the entity 'designed' the letter."). Defendant cites to the testimony of Daniel Van Keuren, Green Tree's Director of Default Services over the property preservation and appraisal department, to dispute whether it designed the door hanger. Van Keuren testified that the door hanger was designed by Green Tree's compliance department, which would mean it was not designed by Safeguard. As evidence to support their position, plaintiffs have asserted that the same door hanger was used by defendant in servicing another lender, that a generic version of this door hanger is included in the Safeguard Field Inspection Reference Guide, and that the letters "SPI" (an acronym plaintiffs claim is a designation for "Safeguard Properties, Inc.") appear at the bottom of the door hanger, causing them to conclude defendant designed the door hanger. This fact in itself, though, has been held insufficient to create a genuine dispute of material fact regarding an entity's status under the FDCPA. <u>See, e.g.</u>, <u>Randle</u>, 48 F. Supp. 2d, at 840 (finding defendant's involvement resembled that of a mailing service even though its name and address appeared in the letters delivered to debtors); <u>Trull</u>, 982 F. Supp. at 601-02 (holding printing and mailing service not debt collector under the FDCPA even though the entity's name appeared on the letters sent to debtors). In the end, the content of the door hanger itself renders the question of who designed it immaterial. There is no substantive content to the door hanger; it's message is nothing more than a phone number and request to call. Even if it was "designed" by Safeguard, there was no real content to "design." Since the question is immaterial as to whether defendant was a "debt collector," plaintiff has not shown a genuine issue of material fact in the matter.

court's earlier decision, as in <u>Simpson</u> and <u>Cohen</u>, the court properly assumed all the well-pleaded allegations of the complaint as true and drew all reasonable inferences in favor of plaintiff in denying Safeguard's motion to dismiss. <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>Killingsworth v. HSBC Bank Nev., N.A.</u>, 507 F.3d 614, 618 (7th Cir. 2007). There had been no discovery or review of the record evidence for genuine disputes of material fact as there is now at the summary judgment stage. Further, the <u>Simpson</u> court determined it was "reasonable to infer that Safeguard attempts to regularly facilitate the collection of debts, which [that] court [found] qualifie[ed] under § 1692a(6) as 'regular[] . . . attempts to collect, . . . indirectly, debts . . . asserted to be owed or due another.'" 2013 WL 2642143, at *2. Whether or not Safeguard facilitates the collection of debts, this court finds that plaintiffs have not shown sufficient evidence that Safeguard regularly collects debts, directly or indirectly, to overcome a motion for summary judgment.[6]

It appears to the court that while it may be the case that Safeguard is "no mere messenger," akin to the United States Postal Service, <u>Siwulec</u>, 465 F. App'x at 204; <u>see also</u> <u>Simpson</u>, 2013 WL 2642143, at *2, that does not automatically make it a debt collector under the FDCPA. Safeguard is a mortgage field servicing company that offers as one of its services contact attempt inspections which can include leaving door hangers containing clients' contact information to encourage communication between borrowers and clients. This practice is not "debt collection," direct or indirect.

### C. Fiduciary Obligation Exception and Alternative Arguments

The court need not address defendant's argument that it is excluded from the definition of debt collector through the fiduciary obligation exception because defendant does not fall within the initial definition in the first place. Finally, since defendant is not a debt collector, it could not have violated §§ 1692e or 1692g, which both apply only to "debt collectors" as defined in section 1692a(6). <u>See</u> 15 U.S.C. §§ 1692a(6), 1692e, 1692g.

### III. CONCLUSION

Based on the aforementioned reasons, defendant's motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied.

Date: 8/29/2017　　　　　　　　　　　　ENTER:

　　　　　　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　　　　　　FREDERICK J. KAPALA

　　　　　　　　　　　　　　　　　　　District Judge

---

[6]With the utmost regard and respect for the courts in <u>Simpson</u> and <u>Cohen</u>, the court notes in passing that Congress chose the words "regularly collects or attempts to collect, directly or indirectly, debts owed . . . ," 15 U.S.C. § 1692a(6), rather than "regularly facilitates the collection of debts owed . . ." and views this distinction as significant.